**Electronically Filed
Intermediate Court of Appeals
CAAP-18-0000393
25-FEB-2019
08:11 AM**

NOS. CAAP-18-0000393 and CAAP-18-0000424

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

IN THE INTEREST OF LK

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-S NO. 16-00154)

SUMMARY DISPOSITION ORDER
(By: Fujise, Presiding Judge, Leonard and Chan, JJ.)

Appellant-Mother (**Mother**) appeals from the Order Terminating Parental Rights filed on May 3, 2018 (**Termination Order**), in the Family Court of the First Circuit (**Family Court**).[1] Appellant-Father (**Father**) also appeals from the Termination Order. On August 30, 2018, Mother's appeal in CAAP-18-0000393 and Father's appeal in CAAP-18-0000424 were consolidated under appellate case number CAAP-18-0000393. The Termination Order, *inter alia*, terminated Mother and Father's parental and custodial duties and rights, pursuant to Hawaii Revised Statutes (**HRS**) § 587A-33, with respect to their young child, LK, who had been in

---

[1] The Honorable Paul T. Murakami presided.

foster care for approximately twenty months at the conclusion of the April 25, 2018 trial.

On appeal, Mother raises two points of error, contending that the Family Court erred in: (1) its June 14, 2018 Findings of Fact and Conclusions of Law (**FOFs and COLs**), by entering FOFs 39, 46, 71, 72, 78, 79, 83-88, and 90, on the grounds that these FOFs were made without substantial evidence in the record; and (2) in entering COLs 14-16, on the grounds that they are not supported by the record because Petitioner-Appellee Department of Human Services' (**DHS's**) testifying representative was not qualified to be an expert in the area of social work. Mother also contends that DHS failed to establish that adoption was preferential to guardianship in this case. Mother requests that this court vacate the Termination Order and award permanent custody to DHS or its authorized agent.

Father raises three points of error, as follows: (1) DHS failed to comply with the Family Court's August 8, 2016 Orders Concerning Child Protective Act (**Order Concerning Service Plan**);[2/] (2) Father's attorney provided ineffective assistance of counsel in stipulating to the expertise of DHS's lone witness and failing to object to hearsay evidence elicited by DHS throughout its case-in-chief; and (3) DHS failed to show by clear and convincing evidence that Father could not provide a safe family home within a reasonable period of time. Father challenges FOFs 9, 10, 15, 17, 20, 27, 39, 41, 57, 58, 63, 65-67, 73, 75-87, 90-91, and COLs 2, 13 and 15.

---

[2] The Honorable Frances Q.F. Wong presided.

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Mother and Father's points of error as follows:

Mother

Mother contends that DHS failed to make a reasonable effort to reunify LK with Mother because DHS did not comply with the August 8, 2016 Order Concerning Service Plan. However, at an October 18, 2016 hearing, DHS explained to the Family Court why family supervision was not yet appropriate because, inter alia, LK's parents were not in a family shelter, they were not compliant with treatment, Mother missed a drug test because she was incarcerated at OCCC, and DHS needed the results from psychological evaluations to prepare a plan for family supervision. The Family Court then modified the Order Concerning Service Plan.[3] Mother and Father did not object to the Family Court's modification of the Order Concerning Service Plan.

Subsequently, in a December 2016 Family Service Plan, DHS provided LK's parents with a written explanation detailing how they could progress from foster custody to family supervision; LK's parents both needed to address their mental health concerns by consistently being compliant with treatment and recommendations by service providers and demonstrate appropriate behavior with service providers. Mother needed to demonstrate through visits she is not a danger to herself or

---

[3] The Honorable Catherine H. Remigio presided and entered the October 18, 2016 Orders Concerning Child Protective Act.

others when caring for a child. Father needed to demonstrate appropriate behavior during visits such as not falling asleep and needing assistance from staff regarding a child's basic needs. Both parents needed to complete hands-on parenting training, complete psychological evaluations and recommended services, demonstrate sobriety, and secure safe housing. DHS complied with the Family Court's modified order to inform LK's parents of the necessary steps to achieve family supervision. LK's parents were provided notice well in advance of the April 25, 2018 trial on the Motion to Terminate Parental Rights. Therefore, we conclude that DHS did not fail to provide reasonable efforts to reunify parents with LK.

We also conclude that the Family Court did not err by considering the testimony of Lena Kakehi (**Kakehi**), a DHS employee. Mother claims since Kakehi was only qualified as an expert in child protective services and child welfare services but not social work, the Family Court should not have considered any of her testimony, including "any third-person information she relied upon to form her opinions," because it was expert testimony, and it would not assist the court to understand the evidence or determine a fact. Mother fails to identify which of Kakehi's statements constituted expert testimony in social work. In addition, Mother failed to object at trial to any of Kakehi's testimony, much less on the basis it was expert testimony beyond her areas of expertise. Mother's counsel elicited testimony from Kakehi that she was the social worker on the case, and Kakehi stated she performs the same work as the "social worker four

position," including case management, investigations, checking on the safety and well-being of children, placement, service planning, attending trials and review hearings, testifying in court, writing reports, and doing home visits. Kakehi's testimony was based upon personal knowledge in her capacity as the social worker for the case, as well as being DHS's representative at trial on the Motion to Terminate Parental Rights.

Mother's claim that the State failed to explain why the goal of adoption was preferred over the goal of guardianship, is without merit. Under HRS § 587A-32(a)(3) (Supp. 2018), DHS must state a compelling reason why legal guardianship or permanent custody is in the child's best interest if adoption is not the goal in a permanent plan. In other words, adoption should be the permanent plan goal unless there is a compelling reason for legal guardianship or permanent custody. DHS's permanent plan stated adoption as its goal. Mother does not point to compelling reasons to establish that legal guardianship or permanent custody was in LK's best interest.

Father

For the reasons stated above, we conclude that Father's contention that the DHS failed to make a reasonable effort to reunify LK with his parents, because DHS did not comply with the August 8, 2016 Order Concerning Service Plan, is without merit.

We further conclude that Father's trial counsel was not ineffective for stipulating that Kakehi was an expert in child protective services and child welfare services. "If scientific,

technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." Hawai'i Rules of Evidence (**HRE**) Rule 702 (2016); Ass'n of Apartment Owners of Wailea Elua v. Wailea Resort Co., 100 Hawai'i 97, 117, 58 P.3d 608, 628 (2002). "[W]hether expert testimony should be admitted at trial rests within the sound discretion of the trial court and will not be overturned unless there is a clear abuse of discretion." Ass'n of Apartment Owners of Wailea Elua, 100 Hawai'i at 117, 58 P.3d at 628 (citation omitted).

Kakehi testified, *inter alia*, that she has a bachelor's degree in psychology and master's degree in counseling psychology, she worked as a Human Services Professional for DHS for almost two years, and her duties were the same as a "social worker four position," as described above. Thus, it does not appear the Family Court would have abused its discretion by qualifying Kakehi as an expert witness, over Father's objection at trial, if counsel had objected. Therefore, we conclude that trial counsel was not ineffective for stipulating to Kakehi's qualification as an expert witness.

Citing HRE Rule 703 (2016), Father also contends that Kakehi's qualification as an expert allowed her to introduce hearsay, "effectively opening the floodgate to a deluge of hearsay, hearsay upon hearsay, and unsubstantiated reports from a

variety of service providers and participants in the case against Father."

HRE Rule 703 provides: "If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence."

Father cites only two instances of hearsay, both in connection with the FOFs issued by the Family Court. Father notes that FOF 57 states in part "DHS in conjunction with Father's probation officer," the State did not call a probation officer to elicit proper evidence, and any evidence offered by DHS was impermissible hearsay. Father also cites FOF 83 and argues that "[t]here was no proper and permissible non-hearsay evidence adduced at the Termination Hearing to establish that the Social Worker Supervisor was consulted with regard to the assessments. Failure to object to any related hearsay was ineffective assistance of counsel."

FOF 57 states:

> 57. DHS in conjunction with Father's probation officer arranged for the following services for Father over the past 21 months: 1) substance abuse assessments, 2) random urinalysis, 3) psychological evaluations, 4) parenting education, 5) outreach counseling and management, 6) Ho'omau Home Visiting/Enhanced Healthy Start, 7) psychiatric treatment and medication compliance, and 8) domestic violence/anger management services.

FOF 83 states:

> 83. The DHS social work and child protective and welfare assessments, opinions and recommendations are based on the joint expertise of the assigned social workers, in consultation with and the review and approval by their respective social worker supervisor.

The December 7, 2016, March 27, 2017, September 12, 2017, and November 13, 2017 Safe Family Home Reports by Kakehi

referenced her interaction with Father's probation officer. Pursuant to HRS § 587A-18(a) (Supp. 2018), DHS must file written reports prior to return hearings, periodic review hearings, permanency hearings, or termination of parental rights hearings. Those reports are admitted into evidence, pursuant to HRS § 587A-18(d). Therefore, the State was not required to call a probation officer as a witness to introduce evidence contained in the written reports.

FOFs 57 and 83 appear to be based on these reports, as well as Kakehi's testimony. Kakehi testified she consulted with her supervisor regarding all matters related to the case. Both Kakehi and a DHS supervisor signed the Safe Family Home Reports noted above and they were admitted into evidence. Therefore, we conclude that FOFs 57 and 83 were not based upon impermissible hearsay. Accordingly, we conclude that Father's trial counsel was not ineffective for failing to object to hearsay evidence elicited by DHS in its case-in-chief.

Finally, we conclude that there was clear and convincing evidence that Father could not presently provide a safe family home even with the assistance of a service plan and that he would not become willing and able to provide a safe family home, even with the assistance of a service plan, within a reasonable period of time, not to exceed two years from the date LK entered foster care.

LK entered foster custody on August 8, 2016. Kakehi testified Father did not participate in drug testing when referred by DHS, did not complete a psychological evaluation or

8

counseling and support services due to repeated incarcerations and no contact from Father, and that a referral to Enhanced Healthy Start was foreclosed due to inconsistent visits and loss of contact due to Father's incarceration. Kakehi stated it was DHS's position that Father was not currently able to provide a safe family home. Father testified that he did not visit with LK because he had started using drugs. Father did not address any of DHS's concerns regarding substance abuse, mental heath issues, and parenting issues. For these reasons, as well as the other reasons stated in the Family Court's FOFs and COLs, we conclude that there was clear and convincing evidence that Father was not currently willing and able to provide LK with a safe family home, even with the assistance of a service plan.

Further, at the time of trial, Father was incarcerated in the Halawa Correctional Facility, with approximately four more years on his sentence. Kakehi stated even if Father were released, it would take Father about one year to complete services and demonstrate he could provide a safe family home. It was Kakehi's opinion that Father would not become willing and able to provide LK with a safe family home, even with the assistance of a service plan, within a reasonable period of time. LK would have to remain in foster custody for over two and a half years, if Father was provided an additional year to complete services and address his issues. Therefore, we conclude that there was clear and convincing evidence that Father would not become willing and able to provide LK with a safe family home, even with the assistance of a service plan, within a reasonable

period of time, not to exceed two years from the date LK entered foster custody.

For these reasons, the Family Court's May 3, 2018 Termination Order is affirmed.

DATED: Honolulu, Hawaiʻi, February 25, 2019.

On the briefs:

Thomas A.K. Haia,
for Mother-Appellant.

Jacob G. Delaplane,
for Father-Appellee.

Julio Herrera,
Jonathan M. Fujiyama,
Deputy Attorneys General,
for Petitioner-Appellee
 Department of Human Services.

Presiding Judge

Associate Judge

Associate Judge